No. 15,426.

LEECH *v.* THE PEOPLE.
(146 P. [2d] 346)

Decided February 21, 1944.

Mr. EARL J. HOWER, Mr. MORTON M. DAVID, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defend-

ant, was convicted of the theft of an automobile and sentenced to the penitentiary for a term of fifteen months to two years. To review that judgment he prosecutes this writ and asks that it be made a supersedeas. He further requests, for good cause appearing, that final disposition be had on this application and in that request the people join. We proceed accordingly.

■ Of the eighteen assignments but three have support in the record, i. e., 1. The judgment is contrary to the evidence. 2. An additional instruction given after long deliberation by the jury was erroneous. 3. The motion for a new trial on the ground of newly discovered evidence should have been granted. Of the other assignments four relate to instructions given. These we pass because the instructions were clearly correct, no one of them was objected to, and the assignments are defective. Four relate to the admission of evidence. These we also pass because no objections were made to the introduction and had there been they should have been overruled. Three relate to the erroneous admission of certain testimony of the witness Holman. These, for reasons hereinafter stated, we notice.

November 18, 1940, defendant bought a new Pontiac automobile of the Kenyon Company of Cortez. For an unpaid balance on the purchase price he gave his note for approximately $1,000, secured by a mortage on the car. Title was registered in defendant, but in January following (without consideration) it was transferred to his wife. The car carried insurance. The Kenyon Company assigned to the Intermountain Finance Company of Durango. December 12, 1941, with installments on said note delinquent and another in the immediate offing, defendant and one Holman took the car from the former's residence to a place some miles distant where they concealed it out of sight of the main highway. The next morning defendant reported the car stolen and search was begun. December 24, 1941, apparently fearful of discovery, defendant sought the further aid of

Holman and together they transferred it to a point near Egnar, concealed it in a clump of trees about 150 feet from the highway, and removing and taking with them the wheels and tires they departed. The automobile was later stripped of almost everything detachable. The insurance company, on the theory of actual theft, paid the policy. Eventually the stripped carcass was discovered, report made to the sheriff and an investigation started which resulted in the filing of an information against defendant and Holman. When the cause came on for trial Holman entered a plea of guilty, his sentence was postponed, and he testified against defendant. He claimed to have first been hired to help with the concealment of the car, later coerced into assisting in its transfer and a promise to return and burn it, and finally, having quarreled with defendant, apparently over his failure to burn, defendant's failure to pay, and the stripping and disposition of accessories, he went to the police. A further detail of evidence is not essential. Suffice it to say that the jurors were entitled to believe the foregoing, and that while this was the theory of the people, that of defendant was that most of the testimony of Holman was false, that he was the actual thief, and that his evidence was motivated by the fact that he was unable to extricate himself from the net in which he was caught, and determined, as a measure of revenge, to carry defendant down with him. There was evidence to support a verdict to that effect had the jurors elected to accept defendant's theory.

■■ 1. As we think appears from the foregoing the judgment was amply supported.

2. The additional instruction, above mentioned, sometimes facetiously referred to as the third degree, has been carefully considered and approved by this court. It was given in the instant case after the jury had been out for approximately twenty-four hours. Under the circumstances it was justified. Apparently counsel so concluded after due consideration because they do not

argue this assignment. *Sevilla v. People,* 65 Colo. 437, 177 Pac. 135; *Bowen v. People,* 87 Colo. 38, 284 Pac. 779.

3. The date when the people contended the car was removed from its first, to its second, place of concealment, as testified to by Holman, was definitely fixed as December 24. Had the jurors believed that Holman testified falsely as to that transaction the conclusion is inescapable that they would have discarded his entire testimony so far as it implicated defendant in the theft, and without that testimony there would have remained no sufficient support for the verdict. As to this, defendant interposed an alibi. He said that on that evening he was home ill in bed. On this point it is therefore clear the jurors gave him no credence. Supporting the motion for a new trial is the affidavit of one Ben Lillard, an apparently disinterested witness, that on the evening of December 24, at the very time defendant was supposed to have been out with Holman transferring this stolen car, Lillard had occasion to call at defendant's home and there conferred with him and that he was then ill in bed. An apparently plausible explanation is given by Lillard why he had not before made this fact known and why defendant could not have located this most material witness. True, this was cumulative evidence because defendant's wife had supported his alibi. But she was a most interested witness and one whose testimony for that reason might well have been, and we know was, wholly discarded by the jurors. Not so that of Lillard. We think under these exceptional circumstances the motion for a new trial should have been granted.

4. Let it here be borne in mind that Holman's testimony was indispensable to support the verdict, that Holman had been originally informed against jointly with defendant and that he had entered a plea of guilty. Now, called as a witness for the people, Holman was asked by the district attorney, on direct ex-

amination: "Q. You have been charged with the same crime as Mr. Leech is being tried for now, have you? A. Yes, sir. Q. Have you entered a plea of guilty to the charge? A. Yes, sir. Q. Do you desire to testify now concerning what you know about this case? A. Yes, sir." This was neither incidental nor accidental. It was no by-product of cross-examination. It did not come from the witness as a voluntary statement. It was the fifth question propounded by the prosecution on direct examination and apparently came with the most careful deliberation. We have held this prejudicial error. *Paine v. People,* 106 Colo. 258, 103 P. (2d) 686. But, say the people, no objection was interposed, hence the error need not be noticed. True, but it is equally true that when such an error appears and justice requires its consideration this court will not ignore it. *Reppin v. People,* 95 Colo. 192, 34 P. (2d) 71. Is this such a case? We need but call attention to one disclosure of this record to so demonstrate. In addition to the two foregoing errors at least several minor ones appear. Yet here is a record of 230 pages in an important criminal case in which sixteen instructions were given to the jury and from first to last not a single objection on the part of counsel for defendant appears. There was no instruction tendered for defendant and no objection made to any instruction given. Ignoring the failure to object to the Holman testimony, as noted above, it is a test on credulity to believe that defendant's interests called for no faint protest from beginning to end. In the face of such a record justice certainly requires that we note serious prejudicial error and act accordingly. We should here observe that counsel who appear for defendant in this court did not represent him on the trial.

The judgment is reversed and the cause remanded for a new trial.